<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC. | : : : : : | |
| Plaintiffs, | : : | Civ. No. 07-5514 (GEB) (JJH) |
| v. | : : | **MEMORANDUM OPINION** |
| APOTEX, INC., APOTEX CORP. | : : : | |
| Defendants. | : : : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the court upon the motion of plaintiffs Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals Inc's (collectively "Teva") to dismiss the ninth, eleventh, twelfth and thirteenth counterclaims of defendants Apotex, Inc. and Apotex Corp. (collectively "Apotex"), or in the alternative for a more definite statement (Docket No. 18). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 2201. The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court will grant in part and deny in part Teva's motion to dismiss. The Court will also deny Teva's alternative motion for a more definite statement.

**I.    BACKGROUND**

On November 15, 2007, Teva filed suit against Apotex alleging that Apotex infringed three of Teva's patents: US Patent Nos. 6,699,997 ("the '997 Patent"); 6,710,184 ("the '184

Patent"); 7,126,008 ("the '008 Patent"); and 7,056,942 ("the '942 Patent," collectively the "Patents in Suit"). (Compl. ¶ 35.)  The patents relate to processes for the preparation of carvedilol, the active pharmaceutical ingredient in COREG®, a product sold by GlaxoSmithKline for the treatment of congestive heart failure.  (Id. ¶ 18.)

On February 21, 2008, Apotex filed an Amended Answer, Affirmative Defenses and Counterclaims (hereinafter "Amended Answer").  The following counterclaims are at issue in this motion: (1) Apotex's ninth counterclaims for a declaration that the Patents in Suit are unenforceable due to alleged inequitable conduct by Teva in securing them; (2) Apotex's eleventh counterclaim for a violation of Section 2 of the Sherman Act; (3) Apotex's twelfth counterclaim for unfair competition; and (4) Apotex's thirteenth counterclaim for tortious interference with a prospective economic advantage.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) (abrogating the Conley standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level.  Id. at 1965.  However, in light of Twombly, the Third Circuit has held that "[i]t remains an acceptable statement of the standard, for example that courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

2

reasonable reading of the complaint, the plaintiff may be entitled to relief'." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citations omitted).  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(e) permits a defendant to make a motion for a more definite statement "[i]f a pleading . . . is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." FED.R.CIV.P. 12(e).  Such a motion "shall point out the defects complained of and the details desired." Id.  The Third Circuit has stated that when a complaint does not provide a defendant with notice of the facts underlying the plaintiff's claims, a "Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying [the] plaintiff's claim for relief." Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006).  However, whether to grant such a motion is soundly within the district court's discretion. Clark v. McDonald's Corp., 213 F.R.D. 198, 232 (D.N.J. 2003).

### B. Ninth Counterclaim: Declaration of Unenforceability

Abbott's counterclaim for a declaration of unenforceability is based upon the alleged inequitable conduct by Teva before the U.S. Patent and Trademark Office ("USPTO") with regards to the '997, '008 and '942 Patents.  Apotex alleges that Teva did not disclose certain material documents to the USPTO, namely "any of the English language counterparts of EP 0 127 099, including U.S. Patent No. 5,01,868, U.S. Patent No. 4,985,454, U.S. Patent No. 4,824,963, and U.S. Patent No. 4,297,022."  (Am. Answer ¶ 66-75.)

Teva argues that Apotex has not sufficiently alleged inequitable conduct under the heightened pleading standard of Rule 9(b).  Teva contends that the USPTO examiner discovered the allegedly withheld documents and that "[a]s a matter of law, if allegedly material information is before the examiner, whether disclosed by the party or raised by the examiner on his own, the party cannot be guilty of inequitable conduct for withholding that information."  (Teva Br. at 13.)

Apotex does not dispute the fact that the examiner discovered the allegedly withheld documents.  However, Apotex disagrees with Teva as to the law, stating that "the fact that an intentionally withheld, material reference was independently discovered by a patent examiner does not, as a matter of law, absolve an applicant from a charge of inequitable conduct."  (Apotex Br. at 16.)  Apotex also argues that its "pleadings with respect to its Ninth Counterclaim for inequitable conduct meet the pleading standard of Rule 9(b) because they disclose the names of the relevant withheld prior art and the act of the alleged fraud."  (Id. at 20.)

Teva replies that Apotex mischaracterizes the present state of the law.  Specifically, Teva argues that the primary case relied upon by Apotex is no longer controlling in light of revised USPTO regulations and in any event, is distinguishable from the present case.  (Teva Reply Br. at 11.)

The Court agrees with Teva.

In Scripps Clinic & Res. Found. v. Genentech, Inc., 927 F.2d 1565, 1582 (Fed. Cir. 1991), the Federal Circuit stated that "[w]hen a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner."  See also Molins PLC v. Textron, Inc., 48 F.3d 1172, 1185 (Fed. Cir. 1995) (following Scripps).  At least one court in this District has noted this ruling is

4

"consistent with the amended Rule 1.56, which states that '[T]he duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office.'" Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 106 F. Supp. 2d 667, 691 n.13 (D.N.J. 2000) (holding that "the penalty accompanying a successful defense of inequitable conduct is not warranted where the processes of the USPTO has not been transgressed, such as where the prior art is otherwise before the USPTO") (quoting 37 C.F.R. § 1.56(a) (1992)).

Although Apotex urges the Court to hold that A.B. Dick Co. v. Burroughs Corp., 798 F.2d 1392 (Fed. Cir. 1986) is controlling, the Court declines to do so. The Federal Circuit in A.B. Dick rejected the argument that the failure to disclose certain materials to the examiner was immaterial due to the fact that the Examiner had subsequently found the undisclosed materials. In so ruling, the Federal Circuit relied, in part, upon an old version of 37 C.F.R. § 1.56(a) regarding the duty of candor owed to the USPTO. The old rule, as relied upon by the A.B. Dick court, stated that practitioners had a duty to "disclose to the Office information they are aware of which is material to the examination of the application." A.B. Dick, 798 F.2d at 1397. However, the current rule, which went into effect in January of 1992 and governs the patents in suit, states in relevant part as follows:

> The duty to disclose all information known to be material to patentability is deemed to be satisfied if, all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b) -(d) and 1.98.

37 C.F.R. § 1.56(a). Thus, the Court concludes that the reasoning of the A.B. Dick court is not

controlling here and that Apotex's allegations do not make out a violation of the duty to disclose.[1]

Apotex also contends that "the policies underlying the law of inequitable conduct and the duty of candor indicate that this court should follow A.B. Dick." (Apotex Br. at 18.) More specifically, Apotex argues that "the inequitable conduct inquiry should not turn on the search skills of a particular Examiner." (Id.) The Court rejects this argument as it is contrary to the policies explicitly set forth in 37 C.F.R. § 1.56(a) and in the Scripps and Molins opinions.

It is undisputed that the document allegedly withheld by Teva was found by the examiner. Therefore, in light of the fact that the alleged failure to disclose the English language counterparts of EP 0 127 099 is the only basis for Apotex's inequitable conduct counterclaim, the Court concludes that Apotex's inequitable conduct counterclaim should be dismissed with prejudice.

### C. Eleventh Counterclaim: Violation of Sherman Act 15 U.S.C. § 2 - Monopolization and Attempted Monopolization

#### 1. The Noerr-Pennington Doctrine

Usually under the Noerr-Pennington Doctrine, patent infringement litigation is immune from attack under the antitrust laws. Prof. Real Estate Investors v. Columbia Pictures, 508 U.S. 49, 56 (1993) ("PRE"); Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998). However, antitrust immunity may be lost under certain circumstances,

---

[1] For the same reason, the Court will not conclude that A.B. Dick directly conflicts with Scripps or Molins PLC. Without a direct conflict, Apotex's argument that a Federal Circuit "panel is obligated to follow the earlier ruling" must fail. See Newell Cos., Inc v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1998) ("Where there is direct conflict, the precedential decision is the first. Even if all comments in the decision considered here are not completely harmonious, Newell points to no actual conflict, and we see none.").

including where the litigation is deemed a "sham."  PRE, 508 U.S. at 60; Nobelpharma, 141 F.3d at 1068.  The Supreme Court has provided a "two-part definition of 'sham' litigation":

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon.

PRE, 508 U.S. at 60-61 (internal quotations and citations omitted).  A suit is not objectively baseless if there is probable cause to sue.  Id. at 62 ("The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation.").  "Probable cause . . . requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication."  Id. at 62-63.

### a. Parties' Arguments

Teva argues that Apotex has not properly alleged any facts under which Teva would lose its antitrust immunity.  Specifically, Teva claims that its immunity from the antitrust laws can only be lost if its conduct constitutes one of the following: (1) so-called Walker Process fraud; (2) sham litigation; or (3) tying of the patented product to the sale of a non-patented product.  (Teva Br. at 3.)  Teva argues that there is no allegation of tying and that Apotex allegations are insufficient to support a claim of either the Walker Process fraud or sham litigation exceptions.  (Teva Br. at 3-8.)

Apotex concedes that it is not alleging a Walker Process fraud claim.  (Apotex Br. at 6

7

("nowhere does Apotex's Amended Answer allege Walker-Process fraud").)  Similarly, Apotex does not contend that there are any tying arrangements here.  (Id. at 4-13.)  Instead, Apotex argues that it has alleged "several other reasons why Plaintiffs do not benefit from antitrust immunity."  (Id. at 6.)  These reasons include: (1) that Teva has "asserted [the '008] patent[, which] they know to be invalid"; (2) and that Teva has "asserted [the '942] patent without a good faith belief of infringement"; and (3) "[f]inally . . . the 'sham litigation' exception . . . . that this litigation is objectively baseless and conceals an attempt to interfere with Apotex's business relationships."  (Id. at 6-7.)  Apotex argues that the litigation is objectively baseless with respect to all the Patents in Suit because "Plaintiffs admit that they have not assessed infringement of any of the asserted patents" and because "Apotex has . . . alleged that these patents are invalid."  (Id. at 7.)  Apotex also contends that its inequitable conduct claims demonstrate that the claims are objectively unreasonable.  (Id.)

In its reply brief, Teva contends that Apotex's "several other reasons" are, in fact, all "'sham' litigation claims governed by the Supreme Court's decision in" PRE.  (Teva Reply Br. at 2.)  Teva argues that Apotex's Section 2 claim must fail "because it has not alleged sufficient facts to show that Teva's lawsuit is objectively baseless."  (Id. at 3.)[2]  Specifically, Teva argues that Apotex makes only "bare legal conclusions" with one exception: Apotex's allegation that "Teva has not obtained and tested samples of the product."  (Id. at 4; Am. Answer ¶ 91.)  Teva argues that this fact is not controlling because, in its Complaint, Teva states that it was unable to obtain Apotex's API or process information and therefore was unable to test Apotex's API to

---

[2] Teva does not argue that the claims fail the second part of the PRE test. Therefore, the Court need not examine the Teva's subjective motivation for bringing suit on this motion.

determine infringement. Moreover, Teva contends that as a matter of law, the fact that it did not perform tests on Apotex's product is, by itself, insufficient to show that the suit is "objectively baseless." (Id.) Teva also argues that Apotex has only provided specific facts regarding the alleged invalidity of the '008 Patent and that "Apotex's bare allegation that the other patents-in-suit are invalid cannot support a 'sham' litigation claim." (Id. at 6.) Finally, Teva claims that the inequitable conduct allegations, which this Court dismissed above, are "not a sufficient basis on which to assert an antitrust claim." (Id.)

### b. The Courts' Analysis

As an initial matter, the Court agrees with Teva that Apotex's antitrust counterclaims are all "sham" litigation claims governed by the Supreme Court's decision in PRE. Here, Federal Circuit law makes clear that allegations that a suit to enforce a patent was brought "with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes" is "sham" litigation. C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1368 (Fed. Cir. 1998).[3] Thus, to the extent Apotex contends that PRE does not control its claims that Teva asserted "a patent they know to be invalid" and "a patent without a good faith belief of infringement," the Court disagrees.

### (1) The '942 Patent

Apotex alleges that Teva asserted the '942 Patent without a good faith belief that Apotex was infringing. Specifically, Apotex alleges that Plaintiffs "did not obtain and test samples of Apotex's products in order to determine whether those products infringe" the '942 patent. (Am.

---

[3] Federal Circuit law, as opposed to Third Circuit law, controls "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws." Nobelpharma AB v. Implant Innovation, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Answer ¶ 91.)  Teva's Complaint confirms that it did not obtain and test samples. (Compl. ¶ 30.)  Apotex also states that "[b]y filing this lawsuit . . . without conducting a basic pre-filing investigation to determine whether Apotex's products infringe this patent, Plaintiffs have asserted a patent without a good faith belief of infringement."  (Am. Answer ¶ 92.)  Even assuming these facts to be true, the Court cannot conclude, on the basis of these facts alone, that Teva sued without a good faith belief of infringement of the '942 Patent.  Apotex does not allege facts that if true, would support a finding that Teva had knowledge of non-infringement.  See C.R. Bard, 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added).  Moreover, Apotex cites no authority that would support a conclusion that a suit is "objectively baseless" simply because Teva did not perform tests on Apotex's product.  Therefore, the Court concludes that Apotex has not alleged facts sufficient to make it plausible, on this ground, that the assertion of the '942 Patent is "objectively baseless."

### (2)    The '008 Patent

Next, the Court concludes that Apotex does allege sufficient facts that, if true, would support a finding that Teva's assertion of the '008 Patent is objectively baseless.  More specifically, Apotex alleges facts that would support a finding that Teva is asserting the '008 patent despite knowing that it is invalid.  Apotex alleges that the '008 Patent claims a process for preparing carvedilol comprising a step of reacting an epoxide ("Formula II") with an amine ("Formula III") "wherein the compound of formula III and the compound of formula II are at a molar ratio from about 1.5:1 to about 100:1."  (Am. Answer ¶ 84.)  Apotex alleges that the '008

10

patent is invalid due to prior art ("the Lienert Patent") that discloses a process for preparing carvedilol using an amine:epoxide molar ratio of 2:1, well within the range claimed by the '008 patent. (Id. ¶¶ 84-89.) Apotex alleges that Teva knows of the invalidity because Teva prosecuted the '997 patent, which is the parent to the '008 patent.[4] (Id.) Apotex alleges that during the prosecution of the '997 patent, Teva amended the '997 patent, limiting the molar ratio range claimed therein to "from about 2.8:1 to about 10:1" so as to avoid the Lienert Patent. (Id.) Assuming these facts as true, and construing them in the light most favorable to the Apotex, the Court concludes that the Amended Answer alleges facts sufficient to support the claim that Teva asserted a patent that it knew was invalid. Other courts have found allegations of known invalidity in similar contexts to be sufficient to satisfy the objective prong of the PRE at the motion to dismiss stage. See, e.g., Knoll Pharms. Co. Inc. v. Teva Pharms. USA, Inc., No. 01 C 1646, 2001 WL 1001117, at * 4 (N.D. Ill. Aug. 24, 2001) (finding that objectively baseless prong is met where defendant in patent suit alleged that, before plaintiff filed suit, defendant sent a letter in which it notified plaintiff that the patents were invalid and unenforceable); In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 643-44 (E.D. Mich. 2000) (denying motion to dismiss antitrust claim on Noerr-Pennington grounds where claimant alleged that patent did not represent a substantive change or improvement over prior patents, but rather was prosecuted

---

[4] Teva's knowledge is relevant to the "objectively baseless" inquiry because it is goes to whether Teva had "a reasonable belief that there is a chance that a claim may be held valid upon adjudication." PRE 508 U.S. at 62-63; see also C.R. Bard, 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added).

solely as a basis for litigation to delay and exclude claimant from the market).[5] Thus, at this stage of the litigation, the Court concludes that Apotex satisfies the objective prong of the test for sham litigation.

The presumption of validity that applies to an issued patent does not save Teva's motion. Although the assertion of a duly granted patent is presumed to be made in good faith, C.R. Bard, 157 F.3d at 1369, the presumption of validity is an evidentiary burden that can be rebutted. 35 U.S.C. § 282 ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity"); Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 992-93 (N.D. Ill. 2003) ("the presumption of validity . . . attaches to an issued patent [and] entitle[s the patentee] to defend the patent's validity in court, to sue alleged infringers, and to settle with them, whatever its private doubts, unless a neutral observer would reasonably think either that the patent was almost certain to be declared invalid, or the defendants were almost certain to be found not to have infringed it, if the suit went to judgment."). Thus, at the motion to dismiss stage, it is not controlling as to the objective prong of the PRE test. Morton Grove Pharms., Inc. v. Par Pharm. Companies, Inc., No. 04 C 7007, 2006 WL 850873, at * 11 (N.D. Ill. March 28, 2006) (rejecting argument that presumption of validity required dismissal of sham litigation antitrust claim on motion to dismiss).

---

[5] Teva's citation to Viva Optique, Inc. v. Contour Optik, Inc., No. 03 Civ. 8948 (LTS)(AJP), 2007 WL 4302729, at *2 (S.D.N.Y. Dec. 7, 2007) is unhelpful because in that case, Plaintiffs claim for a declaration of invalidity had previously been dismissed and the complaint was "bereft of any factual allegation that would support a finding that the patent infringement claims . . . are objectively baseless." (Teva Br. at 7.) Here, invalidity is still contested and the complaint contains sufficient factual allegations with respect to the objective prong of the PRE test.

For these reasons the Court declines to dismiss the allegations regarding the '008 Patent on Noerr-Pennington grounds.[6]

### (3) The Remaining Patents

As to the other Patents in Suit, there are no facts alleged in the Amended Answer to support a finding that Teva's assertion of these patents is objectively baseless. Apotex provides no support, and the Court can find none, for a conclusion that a suit is objectively baseless merely because the patents will be found invalid or not infringed. See In Covad Communications Co. v. Bell Atlantic Corp., 398 F.3d 666, 677 (Fed. Cir.2005) (holding that the fact that a plaintiff's case was dismissed at summary judgment had no bearing on the question of whether the litigation was "objectively meritless"); C.R. Bard, 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added). Therefore, the Court cannot conclude that the Complaint alleges facts that could plausibly demonstrate that the assertion of the remaining patents is objectively baseless due to invalidity.

Finally, in light of the fact that the Court is dismissing Apotex's inequitable conduct claims, the Court rejects Apotex's argument that Teva's suit is "objectively baseless" because of Apotex's allegations of inequitable conduct. (Apotex Br. at 7.)

For the foregoing reasons, the Court will dismiss the antitrust counterclaims to the extent they concern patents other than the '008 patent.

---

[6] As noted above (see footnote 2, supra), Teva does not contend that the allegations would fail under the subjective prong of the PRE test.

2.     **Sherman Act Section 2**

Although Apotex alleged sufficient facts to survive, at least in part, Teva's Noerr-Pennington based argument, Apotex must still allege the elements of a Section 2 claim. PRE, 508 U.S. at 61 ("Of course, even a plaintiff who defeats the defendant's claim to Noerr immunity by . . . must still prove a substantive antitrust violation.") see also Brotech Corp., White Eagle Int'l Tech. Group, Inc., No. Civ.A. 03-232, 2003 WL 22797730, at *4-5 (E.D. Pa. Nov. 18, 2003) (denying dismissal of attempted monopolization counterclaim based upon Noerr-Pennington doctrine, but dismissing counterclaim for failure to properly plead the relevant market). The Court concludes that Apotex has not done so. Section 2 provides as follows:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Apotex asserts both an attempted monopolization claim and a monopolization claim. Under Third Circuit law, to state a claim for monopolization, a party must allege facts sufficient to show: (1) the possession of monopoly power in a relevant market; and (2) willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 437 (3d Cir. 1997).[7] To state a claim for attempted monopolization, a party must allege facts sufficient to show: (1) predatory or anticompetitive

---

[7] Unlike the determination of antitrust immunity, the substantive aspects of the antitrust counterclaims are controlled by Third Circuit law. See Nobelpharma, 141 F.3d at 1068.

conduct; (2) specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power.  Id. at 442.

### a. Parties Arguments

Teva argues that Apotex has not pled facts sufficient to "satisfy the elements of a claim of monopolization and/or attempted monopolization."  (Teva Br. at 8.)  Specifically, Teva argues that Apotex has not sufficiently pled a relevant market.  Additionally, with respect to the monopoly claim, Teva claims that Apotex has not pled monopoly power.  With respect to the attempted monopoly claim, Teva claims that Apotex has not alleged facts sufficient to support a finding of specific intent or dangerous probability of success to monopolize.  (Id. at 8-11.)

Apotex, on the other hand, argues that it has "specifically identified the specific market that Plaintiffs are monopolizing, has described in detail the strategies Plaintiffs purposely employ in order to perpetuate this monopolization scheme, and has alleged that Plaintiffs have effectively executed these strategies and are doing so again."  (Apotex Br. at 8.)  Apotex accuses Teva of misrepresenting its allegations and claims that the relevant market is identified in Amended Answer as "the market for the active pharmaceutical ingredient carvedilol."  (Id. at 8-12.)  Moreover, Apotex argues that its "explanation of Plaintiffs' business, Plaintiffs' patent acquisition strategy, and exactly how Plaintiffs purposely used these patents in an anticompetitive manner to produce litigation that they use to force manufacturers of generic carvedilol product to purchase the API for those products from Plaintiffs" constitutes a sufficient allegation of Teva's specific intent and dangerous probability of success.  (Id. at 12.)  Apotex does not appear to address Teva's argument regarding the lack of market power allegations.

In its reply, Teva contends that with respect to relevant market allegations, "the Amended

15

Answer is hopelessly vague and conflicting with respect to the relevant product market." (Teva Reply Br. at 7.) Moreover, Teva argues that the opposition brief cannot serve to amend the pleadings so as to clarify the relevant market allegations. (Id. at 7-8.) Teva also argues that even if the relevant product market was clearly identified in the pleadings, it is still "deficient because it fails to address interchangeability, cross-elasticity of demand, or any related factors such as price, use, or qualities." (Id. at 8.) With respect to the specific intent to monopolize and dangerous probability of success, Teva argues that "[i]t simply does not follow that . . . Teva's business, patent acquisition strategy, and lawsuits result in either actual market power, a specific intent to monopolize, or a dangerous probability of success of monopolization." (Teva Reply Br. at 9.)

### 3. Court's Analysis

The Amended Answer is plainly deficient in its allegations regarding the Section 2 claim. The Court agrees with Teva that the relevant market allegations are conflicting and variable. In fact, the Amended Answer refers at times to the "market for generic carvedilol products" (Am. Answer ¶¶ 94, 96, 98, 99, 100), at times to the "market for the active pharmaceutical ingredient carvedilol") (Id. ¶ 108) and at other times to the "market for carvedilol" (Id. ¶¶ 107, 109, 110). In any event, the relevant market allegations are deficient because Apotex "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." Queen City Pizza, 124 F.3d at 436. Moreover, Teva is correct that Apotex's brief cannot serve to amend its pleadings. Com. of Pa. ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988).

The Amended Answer is deficient for the additional reason that it contains no allegations

regarding market power; Apotex does not even address the issue in its opposition brief. Additionally, without proper relevant market or market power allegations, the Court cannot find anticompetitive conduct, because "[i]n order to determine whether there is a dangerous probability of monopolization, a court must inquire 'into the relevant product and geographic market and the defendant's economic power in that market.'" Queen City Pizza, 124 F.3d at 442 (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459 (1993)). For these reasons, the Court will dismiss the Section 2 counterclaims without prejudice.

### D. Twelfth Counterclaim: Unfair Competition

Teva argues that Noerr-Pennington immunity bars Apotex's claim for unfair competition. For the reasons discussed in the Noerr-Pennington section above, the court will dismiss, without prejudice, the unfair competition claim to the extent that it concerns the assertion of patents other than the '008 patent. Teva does not argue that the Amended Answer fails to allege fact to support the elements of an unfair competition claim. (Teva Br. at 13-14; Teva Reply Br. at 13.)

### E. Thirteenth Counterclaim: Tortious Interference With Prospective Economic Advantage

Teva argues that Noerr-Pennington immunity bars the state claim for tortious interference with prospective economic advantage. (Teva Br. at 14.) For the reasons discussed in the Noerr-Pennington section above, the court will dismiss without prejudice the tortious interference claim to the extent that it concerns the assertion of patents other than the '008 patent.

Teva also argues that Apotex does not state a claim because it "has completely failed to allege facts concerning the nature of the relationship(s) with which Teva has supposedly interfered, or that Apotex has been harmed by the alleged interference." (Teva Br. at 15.)

17

Apotex argues that it has satisfied the pleading standard and that it "is not required to name, in its pleading, a specific prospective or continuing business relationship with which Plaintiff interfered." (Apotex Br. at 16.)  In its reply brief, Teva does not argue that Apotex must allege a specific relationship.  (Teva Reply Br. at 13-14.)  Instead, Teva argues that the Amended Answer fails under Rule 8(a) "to place Teva on notice of the charges against it, and permit it to file an accurate answer to these charges."  (Id. at 14.)

The Court concludes that the Amended Answer's claim for tortious interference is sufficient under Rule 8(a).  Apotex alleges that it "has a continuing, economically advantageous relationship for the supply of carvedilol for use in its carvedilol products."  (Am. Answer ¶ 116.)  This Court agrees with those recent opinions from this District that conclude that Rule 8(a) does not require a party to identify a specific prospective customer or contract.  See Slim CD, Inc. v. Heartland Payment Sys., Inc., No. 06-2256, 2007 WL 2459349, at *4 (D.N.J. Aug. 24, 2007); Syncsort Inc. v. Innovative Routines Int'l, Inc., No. Civ. 04-3623, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005).  Apotex further alleges that "Plaintiffs have knowingly interfered with this relationship by filing lawsuits for the purpose of barring others from beginning or continuing to supply carvedilol."  (Id. ¶ 117.)  Thus, Apotex concludes that Teva has "intentionally interfered with Apotex's present and future business interests with respect to making and selling products containing carvedilol in the United States, including Apotex's ability to realize an economic advantage therefrom."  (Id. ¶ 119.)  The Court concludes that these allegations are sufficient to provide Teva with fair notice of the claim and the grounds on which it is based.  See, e.g., Kanter v. Barella, 489 F.3d 170 (3d Cir. 2007) ("Notice pleading requires a plaintiff to provide the opponent with fair notice of a claim and the grounds on which that claim is based.").

### F.     Stay

Although Apotex's counterclaims for unfair competition and tortious interference with prospective economic advantage survive, in part, the present motion, the Court will exercise its discretion pursuant to Federal Rule of Civil Procedure 42(b) and stay any discovery, motion practice or trial concerning these counterclaims until resolution of the Teva's patent claims.  See 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 42.20[5][a] (3d ed. 2008) (courts have broad discretion to bifurcate claims and may act sua sponte); Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc., 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("[t]he decision . . . to try [a claim] separately is left to the discretion of the trial court").[8]  The stay here will avoid a potential waste of party and judicial resources.  Therefore, to the extent they survive the present motion, Apotex's counterclaims for unfair competition and tortious interference with prospective economic advantage are stayed.

### III.    CONCLUSION

For the foregoing reasons, Teva's motion to dismiss is granted in part and denied in part.  Apotex's ninth counterclaim is dismissed with prejudice.  Apotex's eleventh counterclaim is dismissed without prejudice.  Apotex's twelfth and thirteenth counterclaims are dismissed without prejudice, except to the extent they concern the enforcement of patents other than the '008 patent.  To the extent the twelfth and thirteenth counterclaims are not dismissed, they are stayed.  Additionally, the Court, in its discretion, declines to grant Teva's alternative motion for

---

[8] Rule 42(b) states, in pertinent part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  FED.R.CIV.P. 42(b).

a more definite statement.  An appropriate form of order is filed herewith.


Dated: August 7, 2008



                                                               s/ Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.